UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:14-cr-25-CLC-SKL |
| v. ) | |
| ) | |
| ) | |
| GARY THOMAS FREEMAN ) | |

**REPORT AND RECOMMENDATION**

Before the Court is a motion to suppress filed by Defendant Gary Thomas Freeman ("Defendant"), seeking suppression of statements he allegedly made to law enforcement officers [Doc. 11].[1] After considering the evidence and arguments, I **FIND** no constitutional violation and **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I. FACTS**

Defendant was indicted on charges he unlawfully possessed a firearm and ammunition on September 28, 2013 [Doc. 1]. At the May 13, 2014 evidentiary hearing on Defendant's motion, the government offered the testimony of Jasper Police Department ("JPD") Officers Rebecca Parker and Tyrone Green. Defendant offered no testimony. As relevant, the witnesses testified as follows:

On September 28, 2013, Officers Parker and Green responded to a "shots fired" call at an apartment complex. Upon arrival, the officers encountered at least Defendant and a woman he lived with, Brenda, outside Defendant's apartment. After a neighboring resident claimed the shot was fired from Defendant's apartment unit, Officer Parker asked Defendant if he knew who fired the gun. Defendant said he did not and denied he shot a gun. Officer Parker then asked if anyone else

---

[1] Defendant's three page motion to suppress and memorandum was referred by standing order for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The government failed to file a timely response in opposition.

was in Defendant's apartment. Defendant said nobody else was in the apartment and gave consent for Officer Parker to look in his apartment. In addition, Brenda gave consent for Officer Parker to go into the apartment. When Officer Parker went into the one-room apartment, she saw, in plain view, a gun case containing a shotgun, and she reported finding the shotgun to Officer Green.

Officer Tyrone Green asked Defendant if the shotgun was his, and Defendant replied, "yes." Defendant stated the gun was rusty, and he planned to clean it. Officer Green asked Defendant if he was a felon, and Defendant acknowledged he had a prior felony conviction for robbery. Defendant was then arrested on the charge of being a felon in possession of a firearm. Defendant was not in handcuffs at the time of his encounter with the officers until after he was placed under arrest, and the officers never drew their guns or threatened Defendant in any way.

Both Officers testified they had encountered Defendant in prior arrests and knew him. Officer Green previously arrested Defendant three times on drunk and disorderly charges; Officer Parker described Defendant as an alcoholic. Both officers saw Defendant was drinking at least beer on the evening at issue, and they described Defendant as having a strong odor of alcohol about him. One or both of the officers also thought Defendant was glassy-eyed, was unsteady on his feet, and had slurred speech to some degree. Both officers also testified Defendant was able to engage in a normal conversation and seemed to understand what was going on. Both officers agreed the conversation with Defendant was cordial.

After considering both officers' demeanor, appearance, mannerisms, interest, and bias, and after considering the slight inconsistencies in the evidence, I **FIND** Officer Green and Officer Parker to be credible.

## II. ANALYSIS

In summary, Defendant argues any self-incriminating statements attributed to him were made prior to receiving *Miranda* warnings and without waiver of his *Miranda* rights. The government does not dispute the lack of *Miranda* warnings, but argues Defendant was neither interrogated nor in custody when he made incriminating statements. Thus, *Miranda* warnings and a waiver were not required.

The Fifth Amendment provides a defendant cannot "be compelled in any criminal case to be a witness against himself." *United States v. Protsman*, 74 F. App'x 529, 532 (6th Cir. 2003) (citing U.S. Const. amend. V.). In order to protect a suspect's constitutional right against compelled self-incrimination, the Supreme Court gave birth to the now familiar "*Miranda* rights" and "*Miranda* warnings" in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). As a result, no criminal suspect may be subjected to custodial interrogation without being advised of his rights under *Miranda*, but the procedural safeguards required by *Miranda* apply "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (citation omitted). "To ensure compliance with this rule, incriminating statements elicited during custodial interrogation prior to *Miranda* warnings cannot be admitted at trial." *United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) (citation omitted); *see also Hoffner v. Bradshaw*, 622 F.3d 487, 511 (6th Cir. 2010) (holding the requirement to give *Miranda* warnings becomes applicable only when a person is subject to custodial interrogation). As held in *Malcolm*, custodial interrogation is questioning initiated by the police after a person has been taken into custody or is "otherwise deprived of his freedom of action in any significant way." 435 F. App'x at 420 (quoting *Miranda*, 384 U.S. at 444).

Turning to the issue of interrogation first, the government argues Defendant and Officer Green engaged in "a conversation, not an interrogation." [Doc. 14 at Page ID # 27]. The legal significance of calling the encounter at issue a "conversation" as opposed to an "interrogation" in the context of *Miranda* is neither explained by the government nor supported by citation to any authority. As the Supreme Court explained in *Rhode Island v. Innis*, "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. . . . [T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." 446 U.S. 291, 300-02 (1980). *See also United States v. Collins*, 683 F.3d 697 (6th Cir. 2012) ("[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (alteration in original) (quoting *Innis*, 446 U.S. at 300-01)).

Based upon the evidence, I conclude Defendant's alleged incriminating statements were the result of express questioning, i.e., an "interrogation," by Officer Green. There is no evidence to suggest Defendant merely volunteered the statement. While the questioning was not coercive, it was express. Officer Green elicited Defendant's statement with words that he should have known were reasonably likely to elicit an incriminating response. Accordingly, I **FIND** Defendant was interrogated for purposes of *Miranda*.

Next, turning to the issue of custody, whether Defendant was in custody is a mixed question of fact and law. *See United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). The Court must determine, under the totality of the circumstances, whether "a reasonable person [would] have felt

4

he or she was not at liberty to terminate the interrogation and leave." *Malcolm*, 435 F. App'x at 420 (quoting *Coomer v. Yukings*, 533 F.3d 477, 485 (6th Cir. 2008)). As explained in *United States v. Conder*, a case cited by Defendant:

> To differentiate between custodial and noncustodial encounters, courts consider the totality of the circumstances of the encounter, with the ultimate inquiry turning on whether a formal arrest occurred or whether there was a restraint on freedom of movement of the degree associated with a formal arrest. Courts focus on the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.
>
> Other factors guiding the inquiry include (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

529 F. App'x 618, 621 (6th Cir. 2013) (internal citations and quotation marks omitted).

"[P]olice encounters in a person's home typically do 'not rise to the kind of custodial situation that necessitates *Miranda* warnings' because the home 'presumably is the one place where individuals will feel most unrestrained in deciding whether to permit strangers into the house, in moving about once the police are there, in speaking as little or as much as they want, in curbing the scope of the interview or in simply asking the officers to leave.'" *Conder*, 529 F. App'x at 622 (quoting *United States v. Panak*, 552 F.3d 462, 465-66 (6th Cir. 2009)). *See also United States v. Gillman*, 432 F. App'x 513, 516 (6th Cir. 2011) ("an in-home encounter between police and a citizen is generally non-custodial."); *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (holding

5

police questioning in the home is "significant" to the custody inquiry because "such a venue generally does not present a coercive environment").

I **FIND** Defendant (and Brenda) gave the officers consent to look around the apartment. At the hearing, Defendant conceded he was not in custody at the time he was questioned and, based on the evidence, I **FIND** Defendant was not in custody. Thus, *Miranda* is not implicated.

Although not raised in his written motion, Defendant argued at the hearing that his intoxication might have rendered his consent or statement involuntary. This argument fails for several reasons. First, as it relates to consent to enter the apartment, even if Defendant was intoxicated, consent was also provided by Brenda, a co-tenant of the apartment. No evidence was presented to suggest Brenda was intoxicated. In *Fernandez v. California*, the Supreme Court held that unless the defendant is physically present and objecting to the search, the search is valid if a co-tenant consents to it. 134 S. Ct. 1126, 1136 (2014). Thus, because Defendant did not object to the search at the time Brenda's consent was given, her consent permitted the police to lawfully search Defendant's apartment.

Second, "[e]vidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). As the Supreme Court has explained, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986) (indicating that if the defendant's state of mind makes him susceptible to coercion, a lesser degree of coercive conduct

6

may render the confession involuntary, but explaining that "mere examination of the [defendant]'s state of mind can never conclude the due process inquiry."). Thus, police do not act coercively by conducting an interview with an intoxicated defendant unless they know of the defendant's weakened mental state and choose to exploit it. *See United States v. Treadwell*, 11 F. App'x 502, 511 (6th Cir. 2001).

While intoxication is a factor in determining the voluntariness of a consent or waiver of rights, a defendant can voluntarily waive his rights or consent even when intoxicated. *See e.g.*, *United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013) (intoxication does not necessarily make consent involuntary); *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir.2010) (citing *United States v. Watters*, 572 F.3d 479, 483 (8th Cir.2009) ("Factors relevant to the voluntariness of a defendant's consent include whether the defendant was intoxicated, but intoxication alone does not render consent invalid."); *United States v. Scheets*, 188 F.3d 829, 839-40 (7th Cir.1999) ("The mere fact that an individual is intoxicated does not render consent involuntary. . . . It is simply another factor to be taken in consideration when assessing the totality of the circumstances."); and *United States v. Gay*, 774 F.2d 368, 377 (10th Cir.1985) (holding that defendant "can be too intoxicated to operate a motor vehicle, but rational enough to [consent]")).

Even if Defendant was intoxicated at the time of his confession, in assessing the totality of the circumstances, I **FIND** no evidence the officers knew of and took advantage of any significant weakened mental state of Defendant or acted coercively. Both officers described Defendant as cooperative, coherent, and fully able to engage in a conversation even though he was unsteady on his feet and reeked of alcohol. There was no evidence presented to indicate Defendant, a very experienced drinker, was impaired beyond the capacity to give valid consent or to make a voluntary

7

statement. The officers credibly testified they did not threaten Defendant, no weapons were drawn, and no harsh language was used. Defendant had unrestrained freedom of movement during the noncustodial questioning and acquiesced to answering questions. While Defendant was not told that he could refuse to answer questions or to consent to allowing the police in his apartment, such admonitions were not required. *See Conder*, 529 F. App'x at 623 (citing *Panak*, 552 F.3d at 467).

I **FIND** the evidence demonstrates Defendant was not subjected to custodial interrogation, and I **CONCLUDE** his statements and consent were voluntary.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[2] that Defendant's motion to suppress [Doc. 11] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).